NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 241151-U

NO. 4-24-1151

IN THE APPELLATE COURT

FILED
December 12, 2024
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| DYLAN R. DENHAM, | ) | No. 23CF628 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Debra D. Schafer, |
| | ) | Judge Presiding. |

JUSTICE GRISCHOW delivered the judgment of the court.
Justice DeArmond concurred in the judgment.
Justice Lannerd specially concurred.

**ORDER**

¶ 1     *Held*:  The appellate court affirmed, concluding (1) under *People v. Jones*, 2023 IL App (4th) 230837, the State was permitted to file a petition to deny pretrial release in response to defendant's motion for reconsideration of his pretrial release conditions and (2) the trial court did not abuse its discretion in denying defendant pretrial release.

¶ 2     Defendant, Dylan R. Denham, appeals the trial court's order entered August 24, 2024, denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq.* (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4          On March 16, 2023, defendant was charged by criminal complaint with first degree murder (720 ILCS 5/9-1(a)(2) (West 2022)) for the fatal shooting of Deontay Turner. According to the complaint, on or about April 14, 2022, defendant shot Turner without lawful justification, knowing such an act would create a strong probability of death or great bodily harm to Turner, and thereby caused Turner's death. A warrant was issued for defendant's arrest, and he was arrested on April 4, 2023. The following day, a $3 million (10%) cash bond was set. Defendant was also required to surrender all firearms and his firearm owners identification (FOID) card and to have no contact with gang members. On April 21, 2023, the grand jury returned a five-count indictment charging defendant with first degree murder and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)).

¶ 5          On April 19, 2024, defendant filed a motion to reconsider the conditions of his pretrial release pursuant to the Code. Defendant asserted that pursuant to section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)), having been in pretrial detention on or after January 1, 2023, and after having been ordered released with pretrial conditions, he was entitled to a hearing as provided for in section 115-5(e) (*id.* § 110-5(e)) to determine the reason for his continued detention and to reopen his conditions of pretrial release. Citing *People v. Watkins-Romaine*, 2024 IL App (1st) 232479, defendant furthermore asserted the State by that point was "beyond the time restraints set forth by [section 110-6.1 of the Code (725 ILCS 5/110-6.1)]" and, therefore, "a petition for detention would be untimely." On April 24, 2024, the State filed a petition to deny pretrial release pursuant to section 110-6.1(a)(1.5) (725 ILCS 5/110-6.1(a)(1.5) (West 2022)) because defendant was charged with a forcible felony and his pretrial release would pose a real and present threat to the safety of any person or persons or the community. The State identified

"the discovery, the indictment, the pretrial report, [and] the defendant [being] on parole and *** not following conditions" as "[a]dditional grounds upon which [he] should be denied pretrial release."

¶ 6        On April 24, 2024, the trial court held a hearing on defendant's motion to reconsider and the State's petition to deny pretrial release. Defendant's counsel asserted the State's petition was untimely, "given that this is a petition pursuant to Section 110-6 and my petition is pursuant to Section 110-7.5, which necessitates a hearing under Section 110-5(e)." Counsel stated he was relying on *Watkins-Romaine* in support of this proposition. In response, the State noted *Watkins-Romaine* is a decision of the First District, whereas this court had addressed the timeliness of a petition to deny pretrial release in *People v. Jones*, 2023 IL App (4th) 230837, which would be binding on the trial court. The court then noted, in *Jones*, this court "determined that the State is permitted to file a petition to deny pretrial release" with respect to a defendant who has filed a motion to reconsider their pretrial release conditions. The court continued, "This is the Fourth District. I have to follow the Fourth District. There are—unless it's distinguishable in some way, and I don't find that it is distinguishable." Emphasizing it had "to follow the Fourth District case," the court permitted the State to file its petition.

¶ 7        The State then proffered the following description of Turner's fatal shooting. On or about April 14, 2022, ShotSpotter equipment detected multiple gunshots near 11th Street and 6th Avenue in Rockford. Police responded to the scene and discovered Turner face down on the sidewalk with bullet wounds in his back. Turner was taken to the hospital, where he died. In their subsequent investigation, police learned Turner was walking northbound on 11th Street when he was shot. A "Ring surveillance camera" recorded an individual the State identified as defendant, wearing a black hooded jacket, approaching Turner from behind on foot. While within a maximum

distance of 10 feet of Turner, defendant shot him approximately 20 times. Thereafter, defendant ran to a gray Mazda 5 driven by Tyrice Scott. Surveillance footage also showed Desmond Wilkerson in the vicinity. Wilkerson informed police he and defendant "had just gotten out of the vehicle" at the time of the shooting. Wilkerson was seen on the video "walking behind, almost as [a] lookout." Wilkerson told police that defendant told him to come with him to murder Turner, but Wilkerson did not want to, whereupon "defendant forced him to get out of the car and demanded he go with [him]." Wilkerson explained defendant was "hanging out" with members of the Hunnit Mill street gang, of which Scott was a member. On that day, according to Wilkerson, "defendant saw Mr. Turner walking and thought he had been part of an opposition gang to Hunnit Mill so that's why he decided to murder him." The State represented that both Wilkerson and Scott were cooperating with the prosecution; the latter had given a recorded statement admitting to driving the Mazda 5 that day. The State also proffered that Scott had given his gun to Wilkerson, who had given it to defendant.

¶ 8        The State summarized defendant's criminal history. Defendant was on parole for armed robbery at the time of Turner's murder and, according to his parole officer, left Illinois without permission and was otherwise noncompliant with his parole conditions. The State asserted, "as shown from his inability to abide by his parole conditions, that there are no conditions or set of conditions that he would be able to follow to be able to not be a threat to the community."

¶ 9        In response, defendant's counsel began by noting that Wilkerson and Scott were previously charged with the murder but are now "pointing the finger" at defendant under cooperation agreements. Additionally, counsel asserted that witnesses reported to police that they saw two men, a light-skinned Black male and a dark-skinned Black male, on the scene. Counsel then stated, "And, obviously, [defendant] is white." Counsel later clarified one of the two people

observed by the witnesses "is believed to be Mr. Wilkerson; the other is the shooter." Counsel then proposed various potential conditions of pretrial release for defendant, including living with relatives at a residence close to the courthouse. Counsel noted defendant's family ties to Rockford, employment history, educational background, and willingness to comply with any conditions required by pretrial services. Counsel acknowledged defendant left Illinois while on parole and went to Florida, but he explained that was where defendant's daughter was living. Counsel also argued:

> "You know, there's an indication this was a gang-related shooting. There's no indication whatsoever that [defendant] was ever in a gang; I think just that Mr. Scott was in a gang. So I think the notion that somebody would murder someone—empty a gun into someone, point-blank range in broad daylight—basically, because they're an opposition gang member of the guy you're hanging out with I think strains credulity here, Judge."

¶ 10　　　　The trial court inquired, "[W]hat are the consistencies or inconsistencies between Mr. Wilkerson and Mr. Scott, in terms of their information about what allegedly happened?" Defendant's counsel responded that Wilkerson claimed defendant was "essentially the primary instigator of this incident and forced [him], essentially at gunpoint, to go with him to commit this crime—again, basically out of nowhere." By contrast, Scott claimed Wilkerson "was also complicit in this and was fully cooperating and wanting to go forward with this incident." The State asserted that Wilkerson "was a willing participant" but was not the shooter (although he received the gun from Scott and gave it to defendant, who was found in possession of it after the shooting).

¶ 11    The trial court began its ruling by noting, "Clearly, a murder was committed. The question is more who did it." Based on the proffers from both sides, the court noted there were two witnesses to the shooting, both of whom identified defendant as the shooter. The video corroborated the witnesses' accounts of the incident. The shooter shot approximately 20 times, killing the victim. The court found, based on the information provided, there was clear and convincing evidence to support that defendant committed the offense. The court further found the random and opportunistic nature of the offense posed a real and present threat to "either those witnesses or the community generally."

¶ 12    Finally, the trial court addressed whether there was any condition or combination of conditions which would ensure defendant's compliance with pretrial release and mitigate the threat the court found he posed. The court noted defendant was convicted of possession of a stolen motor vehicle in 2014; while on probation for that, he was convicted of armed robbery; and while on parole for that, he was charged with Turner's murder. Defendant also left Illinois without permission and was otherwise noncompliant with parole. Further illustrating defendant's noncompliance with court orders was his unsuccessful discharge from probation in a juvenile case. The court also noted the pretrial report reflected defendant had several mental health diagnoses but was not taking medication or otherwise being treated for them. The court ultimately concluded there were no conditions that could be put in place to ensure defendant's compliance with pretrial release or mitigate the threat he posed, denied his motion to reconsider his pretrial release conditions, and granted the State's petition to deny pretrial release.

¶ 13    Defendant addressed the trial court after it delivered its decision. Defendant stated:

"Would this hearing that we just had—what type of hearing was this considered? Because by my understanding of the statute,

with me being incarcerated before the Act went in effect of 110-7.5(b), I'm entitled and I shall have a hearing under Section 110-5(e), which is a modification for conditions of pretrial release. And this seems like this was just a detainment hearing."

The court explained it entertained the State's petition "based on the caselaw that we talked about earlier." The court accordingly told defendant, "You can think of it as a detainment hearing." Defendant continued:

"All right. But the actual plain text of the statute says that I'm supposed to have a hearing for the modification, and Section 110-5(e) states that it's for modifications of conditions of release. And denial is not a condition of release. That's outright denial. Detainment is a denial. It's not a condition of release."

The court responded, "You know what the statute says. *** [B]ut the caselaw that has interpreted the statute is interpreting it in a way that you don't like." The court explained it is "obligated to follow the *Jones* case," pursuant to which the State was allowed to file its petition to deny pretrial release. Defendant stated he had read other cases that reached a different conclusion. The court acknowledged defendant's disagreement with how the caselaw interpreted the statute and informed the defendant he could use that as a basis for a motion for relief or on appeal.

¶ 14 On May 3, 2024, defendant filed a "Motion for Relief Under the Act." Defendant argued the State failed to meet its burden of proving by clear and convincing evidence the proof is evident or the presumption great that he committed the murder. Defendant asserted the State failed to meet its burden in that it only proffered "two self-interested biased witnesses who were able to extricate themselves from their own charges related to this murder by implicating *** defendant."

By contrast, "independent disinterested witnesses" would testify to observing two Black males in the vicinity at the time of the shooting, and defendant is White. Moreover, "[t]here was no proffer of any forensic evidence tying *** defendant to the scene." Defendant also argued the State failed to meet its burden of proving by clear and convincing evidence he posed a real and present threat to the safety of any person or persons or the community. In particular, he argued, "The State's theory of the case strains credulity in that it is alleged that [defendant] committed a murder in broad daylight pursuant to a gang rivalry he has no part in." Next, defendant argued the State failed to meet its burden of proving by clear and convincing evidence no condition or combination of conditions could mitigate the threat he posed. Specifically, he contended the trial court "conflated" the separate statutory considerations of "dangerousness" and "conditions" and "did not separately consider conditions of release," such as the ones proposed at the April 2024 hearing. Finally, defendant argued again that the court improperly allowed the State to file a petition to deny pretrial release when the court instead should have afforded him a hearing to determine the reason for his continued detention and to reopen conditions of pretrial release pursuant to section 110-5(e) (725 ILCS 5/110-5(e) (West 2022)). Defendant relied on the First District's decision in *Watkins-Romaine* in support of his contention that the State's petition was untimely in that the State did not file it at his first appearance. The State did not respond to defendant's motion for relief.

¶ 15        On May 8, 2024, the trial court held a hearing on defendant's motion for relief. After arguments, the court denied defendant's motion. The court explained:

> "I can forecast some things you're going to be doing at trial
> concerning challenging the credibility of Mr. Scott and Mr.
> Wilkerson, considering the benefits they received, having charges
> dismissed, having first degree murder charges dismissed with Mr.

Scott in favor of something lesser. *** I also am aware, as the parties have made it very clear, that no one on the outside is saying [defendant] did this. They don't have an eyewitness who has picked out [defendant] in a photo lineup. It is relying it appears on the testimony or anticipated testimony of Mr. Wilkerson and Mr. Scott. ***

And so I still do find that the proof is evident or the presumption great that the defendant committed the offense. *** Given the nature of the charge, but not only the nature of the charge, I do find that he poses a real and present threat. I outlined my reasons for that. He has a history with probation and being unsuccessfully discharged. He was on parole at the time of the alleged offense. He was noncompliant with his parole. And so for those reasons, as well as all the other reasons that I had articulated in the motion, I did find that there are no conditions or combination of conditions that would address that specific threat and mitigate it. So I am going to stand by the decision."

¶ 16     This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18     On appeal, defendant argues (1) the trial court erred in detaining him pursuant to the State's untimely petition to deny pretrial release rather than affording him a hearing to reopen his conditions of release and (2) the State did not meet its burden of proving by clear and convincing evidence the proof is evident or the presumption great he committed the murder.

¶ 19                          A. Timeliness of the State's Petition

¶ 20          Defendant acknowledges the trial court relied on this court's decision in *Jones* in permitting the State to file its petition to deny pretrial release over his argument it was untimely, but he asserts "*Jones* was wrongly decided" and "[b]ased on the plain language of the Act, the State's petition was untimely and the court lacked authority to detain [him]" pursuant to the decisions of the First District in *Watkins-Romaine* and *People v. Brown*, 2023 IL App (1st) 231890. Defendant asserts section 110-6.1(c) (725 ILCS 5/110-6.1(c) (West 2022)) required the State to file its petition on April 5, 2023, the date of his first appearance. Notwithstanding having been arrested prior to the effective date of the Act, defendant argues, along the lines of these two First District decisions, he was entitled to a hearing to determine the reason for his continued detention and to reopen conditions of pretrial release under section 110-5(e). In response, the State asserts the trial court was obligated to permit it to file its petition to deny pretrial release pursuant to this court's decision in *Jones*.

¶ 21          As indicated in the above discussion, there is, at present, a split in the districts of the Illinois Appellate Court regarding whether the State is permitted to file a petition to deny pretrial release for a defendant who was arrested and ordered released on conditions prior to the effective date of the Act when it did not file the petition in accordance with the time frame set forth in section 110-6.1(c). For purposes of the instant appeal, this split is manifested between this court and the First District through the decisions in *Jones* and *Watkins-Romaine*, respectively.

¶ 22          In *Jones*, the defendant was charged with various offenses in July 2023—prior to the effective date of the Act. *Jones*, 2023 IL App (4th) 230837, ¶ 3. The trial court set a monetary bond, but the defendant did not pay it and remained in detention. *Id.* In September 2023, the defendant filed a motion for pretrial release. *Id.* ¶ 4. Two days later, the State filed a petition to

deny pretrial release pursuant to section 110-6.1, as amended by the Act. *Id.* The trial court entered an order denying pretrial release. *Id.* ¶¶ 5-6. The defendant appealed, arguing the Code did not permit the State to file a "responsive petition to deny pretrial release" regarding a defendant who remained in custody after being ordered released upon paying bail. *Id.* ¶ 9. In particular, the defendant contended that under section 110-6.1(c), the State was only permitted to file a petition to deny pretrial release "during the defendant's first appearance or upon the defendant's arrest and release." *Id.* ¶ 12. In response, the State relied on section 110-6(g) in support of the proposition that "the Code allows courts to take the necessary steps to review and revise a defendant's pretrial detention." *Jones*, 2023 IL App (4th) 230837, ¶ 12.

¶ 23        Five provisions of the Code were central to the resolution of the appeal in *Jones*. Under section 110-6.1(c)(1), "A petition may be filed without prior notice to the defendant at the first appearance before a judge, or within the 21 calendar days, except as provided in Section 110-6, after arrest and release of the defendant upon reasonable notice to defendant." 725 ILCS 5/110-6.1(c)(1) (West 2022). Section 6(g) provides, "The court may, at any time, after motion by either party or on its own motion, remove previously set conditions of pretrial release, subject to the provisions in this subsection." *Id.* § 110-6(g). Under Section 6(i), "Nothing in this Section shall be construed to limit the State's ability to file a verified petition seeking denial of pretrial release under subsection (a) of Section 110-6.1 or subdivision (d)(2) of Section 110-6.1." *Id.* § 110-6(i). Nevertheless, "[o]n or after January 1, 2023, any person who remains in pretrial detention after having been ordered released with pretrial conditions, including the condition of depositing security, shall be entitled to a hearing under subsection (e) of Section 110-5." *Id.* § 110-7.5(b). Section 5(e) provides, "If a person remains in pretrial detention 48 hours after having been ordered released with pretrial conditions, the court shall hold a hearing to determine the reason for

continued detention," in which, under certain circumstances, "the court shall reopen the conditions of release hearing to determine what available pretrial conditions exist that will reasonably ensure the appearance of a defendant as required, the safety of any other person, and the likelihood of compliance by the defendant with all the conditions of pretrial release." *Id.* § 110-5(e).

¶ 24 This court concluded:

"Based on this plain language, the Code does not require the State to file all its petitions within 21 days of a case's commencement. Section 110-6(g) allows for the increase of pretrial release conditions after a hearing. [Citation.] For defendants arrested and detained before the Act's effective date who remained in detention after being granted pretrial release on the condition that they pay monetary bail, a motion to deny pretrial release following the Act's implementation operates as a motion to increase the pretrial release conditions to the furthest extent. The Code, as amended by the Act, allows the State to seek to modify pretrial release conditions, which includes filing a responding petition where the defendant moves for pretrial release. *** Accordingly, we find that section 110-6's exceptions to the filing time frame restrictions set forth in section 110-6.1(c)(1) apply here." *Jones*, 2023 IL App (4th) 230837, ¶ 17.

¶ 25 The First District would take a different approach, expressly disagreeing with this court's conclusion in *Jones*, in its decision in *Watkins-Romaine*. There, 17 days before the effective date of the Act, the trial court rejected the State's request for a " 'no bail' " order and imposed a

- 12 -

monetary bond as a condition of pretrial release. *Watkins-Romaine*, 2024 IL App (1st) 232479, ¶ 5. In December 2023, the defendant filed a petition for release from detention. *Id.* ¶ 7. The State responded with a petition for pretrial detention (even though the defendant remained in custody). *Id.* After a hearing, the court granted the State's petition. *Id.* ¶ 22. The defendant appealed, arguing the State's petition was untimely. *Id.* ¶ 24. The First District began its analysis by noting:

> "The central question before us is whether the Code, outside of the specific timing requirements of section 110-6.1(c), permits the State to seek the pretrial detention of an individual who is already in custody because he was granted bail under the previous statutory scheme but who nevertheless could not satisfy one of the conditions of his release." *Id.* ¶ 26.

¶ 26        The court referred to its decision in *Brown*, where it held the State's petition for pretrial detention was untimely "because it was not filed for three months after the defendant's first appearance before a judge." *Id.* ¶ 33. (citing *Brown*, 2023 IL App (1st) 231890, ¶ 13). The court then held the State's petition for pretrial detention in *Watkins-Romaine* was likewise untimely, as it was not filed at the defendant's first appearance. *Id.* ¶ 34. The court disagreed with this court's contrary conclusion in *Jones*, explaining that "[n]owhere does the Code provide that the State may file a petition on defendant's first court date after the amended Code went into effect." *Id.* ¶ 37. The court continued:

> "The fact that the Code's timing requirements do not account for a defendant's first appearance after the amendment's effective date should not and cannot be seen as an oversight. The existence of section 110-7.5 of the Code demonstrates that the legislature

foresaw the need to account for pending cases with preexisting bail

rulings when the amended Code went into effect. Thus, it is telling

that the prescribed procedure for individuals in defendant's position

is a hearing only to determine the reasons for the continued

detention. [Citation.] If the legislature wanted the hearing triggered

by section 110-7.5(b) to include reconsideration of whether a

defendant is eligible for release or if it wanted to give the State the

ability to file a petition for detention against defendants who had

already been ordered released but remained in custody after the

effective date of the amended Code, it would have said so." *Id.* ¶ 39.

The court concluded, "Accordingly, neither *** *Jones* nor the cases that rely on [it] can be

followed, because they are inconsistent with the plain language of the amended Code." *Id.* ¶ 47.

¶ 27 Despite defendant's arguments regarding the alleged incorrectness of this court's

decision in *Jones* and the alleged correctness of the decision of the First District in

*Watkins-Romaine*, the trial court was obligated to follow *Jones* in assessing the propriety of the

State's filing of its petition to deny pretrial release. As the First District has observed:

"It is fundamental in Illinois that the decisions of the appellate court

are binding precedent on all circuit courts, regardless of locale.

[Citation.] Decisions of the appellate court in one district, though

not binding on the appellate court in other districts, are binding on

circuit courts throughout the state. [Citation.] In the event conflicts

arise amongst the districts, the circuit court is bound by the decision

of the appellate court of the district in which it sits. [Citation.]

- 14 -

Generally, a trial court located in one appellate district will adhere to the decisional law in that district. [Citation.]" *Universal Metro Asian Services Ass'n v. Mahmood*, 2021 IL App (1st) 200584, ¶ 30.

In *Jones*, this court concluded "the Code permits the State to file a responding petition in cases *** where the defendant was arrested and detained prior to the Act's effective date and remained in detention after monetary bail was set." *Jones*, 2023 IL App (4th) 230837, ¶ 24. We decline defendant's implicit invitation to reconsider our holding in *Jones*. The trial court properly followed the sound precedent of *Jones* by permitting the State to file its petition to deny pretrial release. Accordingly, defendant's argument regarding the untimeliness of the State's petition is unavailing.

¶ 28                                    B. Denial of Pretrial Release

¶ 29          Defendant argues the State, through its proffer, failed to prove by clear and convincing evidence the proof is evident or the presumption great he committed the murder. In particular, given that Wilkerson's charges were dropped and Scott was granted a plea deal "by pointing the finger at [defendant]," the State did not proffer evidence "from any non-biased witnesses that cast [defendant] as the shooter or even placed him at the scene or in the area." Moreover, "[n]o other evidence connected [defendant] to the crime" and neighbors told police they saw two people, both Black males, in the vicinity. In response, the State contends "the trial court heard evidence sufficient to support its determination by clear and convincing evidence that defendant committed the offenses alleged."

¶ 30          Before a trial court grants a petition seeking to deny pretrial release, the State must prove by clear and convincing evidence (1) "the proof is evident or the presumption great that the defendant has committed an offense listed in subsection (a)," (2) "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific

articulable facts of the case," and (3) "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(1), (2), (3)(i) (West 2022). We review a pretrial release decision for an abuse of discretion. *People v. Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11. An abuse of discretion occurs when the decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would agree with the court's position. *Id.* ¶ 10. Under this standard, a reviewing court will not substitute its own judgment for that of the trial court simply because it would have analyzed the proper factors differently. *Id.* ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44.

¶ 31    We conclude the trial court did not abuse its discretion in granting the State's petition to deny pretrial release. According to the State's proffer, Turner was found face down and deceased from multiple gunshot wounds near the intersection of 11th Street and 6th Avenue in Rockford, having walked northbound on 11th Street shortly before being shot. A surveillance camera recorded an individual identified as defendant approaching Turner from behind and shooting him approximately 20 times. Defendant then ran to a gray Mazda 5 driven by Tyrice Scott. Surveillance video also showed Desmond Wilkerson, who was also a passenger in the Mazda 5, "walking behind, almost as [a] lookout," and Wilkerson told police defendant forced him out of the car and demanded he accompany him to the scene where he would murder Turner. Wilkerson also explained defendant's acquaintance with members of a gang to which Scott belonged and defendant's decision to murder Turner on the belief he was a member of an opposing gang. The State also proffered that Scott had given his gun to Wilkerson, who had given it to defendant. Based on this proffer, the court concluded "there is clear and convincing evidence to

support that [defendant] committed the offense, allegedly, if believed," particularly in that Wilkerson and Scott had identified defendant as the shooter and the video reflecting only one person shooting "is some element of corroboration to the statements that [Wilkerson and Scott] have given to the police." At the hearing on the motion for relief, the court maintained its position that "the proof is evident or the presumption [is] great that *** defendant committed the offense," having noted the "anticipated testimony of Mr. Wilkerson and Mr. Scott," even though "no one on the outside is saying [defendant] did this," such as an independent eyewitness who may have identified defendant through a "photo lineup." The trial court's determination that the State met its burden of proving by clear and convincing evidence that the proof was evident or the presumption great defendant committed the murder was not arbitrary, fanciful, or unreasonable or such that no reasonable person would agree with the court. *Inman*, 2023 IL App (4th) 230864, ¶¶ 10-11("We are not reviewing the State's evidence anew. Instead, we are reviewing the [trial] court's evaluation of that evidence for an abuse of discretion.").

¶ 32        As defendant did not argue on appeal any error in relation to the trial court's findings regarding the threat he was found to pose to any person or persons or the community or the inadequacy of any conditions of pretrial release to mitigate that threat, those points are forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 33        In sum, (1) the trial court did not err in allowing the State to file its petition to deny pretrial release rather than afford defendant a hearing to reopen his previously ordered pretrial release conditions and (2) the court did not abuse its discretion in finding the State proved by clear and convincing evidence the proof was evident or the presumption great defendant committed the murder.

¶ 34                                    III. CONCLUSION

¶ 35             For the reasons stated, we affirm the trial court's judgment.

¶ 36             Affirmed.

¶ 37             JUSTICE LANNERD, specially concurring:

¶ 38             I agree with my esteemed colleagues that we should affirm the circuit court's judgment denying defendant pretrial release. However, I write separately because I do not join in the analysis contained in paragraphs 20 through 27 (*supra* ¶¶ 20-27) of the majority's decision.

¶ 39             As Justice Turner explained in his special concurrence in *Jones*, section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)) only applies to persons charged after the effective date of the Act. *Jones*, 2023 IL App (4th) 230837, ¶ 38 (Turner, J., specially concurring). However, section 110-7.5(b) of the Code (725 ILCS 5/110-7.5(b) (West 2022)) allows the State to respond to a defendant's petition for pretrial release in situations where a defendant was charged prior to the Act's effective date. See *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 22; *People v. Rios*, 2023 IL App (5th) 230724, ¶ 17. As a result, the circuit court did not make a clear or obvious error by considering the State's petition.

¶ 40             I agree with the remainder of the majority's analysis.